UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 16-9203 DMG (PJWx)** | Date | February 10, 2017 |
| Title | ***David W. Gayman, et al. v. Wells Fargo Bank, N.A., et al.*** | Page | 1 of 13 |

Present: The Honorable DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

| | |
|---|---|
| KANE TIEN | NOT REPORTED |
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
| None Present | None Present |

**Proceedings: IN CHAMBERS - ORDER RE DEFENDANTS' MOTION TO DISMISS [10]**

## I. PROCEDURAL BACKGROUND

On November 23, 2016, Plaintiffs David W. Gayman and Maria F. Gayman (the "Gaymans"), as individuals and as Trustees for the Gayman Family Living Trust, filed a Complaint in Los Angeles County Superior Court against Defendants Wells Fargo Bank, N.A. ("Wells Fargo") and NBS Default Services, LLC ("NBS" and, collectively, "Defendants") for violations of California Civil Code sections 2923.55, 2924.17, and 2923.6; negligence; violation of California Business & Professions Code section 17200 ("UCL"); and an accounting. [Doc. # 1-1.] On December 13, 2016, Wells Fargo removed the case to this Court on the basis of diversity jurisdiction, pursuant to 28 U.S.C. section 1332. [Doc. # 1.] NBS filed a Joinder in Wells Fargo's Notice of Removal, also on December 13, 2016. [Doc. # 4.]

On December 20, 2016, Wells Fargo filed the instant Motion to Dismiss ("MTD") and a Request for Judicial Notice ("RJN") in support of the MTD. [Doc. ## 10, 11.] The next day, NBS joined in Wells Fargo's MTD. [Doc. # 13.]

## II. JUDICIAL NOTICE

Federal Rule of Evidence 201 permits a court to take judicial notice of facts not subject to reasonable dispute and "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Campbell v. PricewaterhouseCoopers, LLP*, 642 F.3d 820, 824, n.3 (9th Cir. 2011) (citing Fed. R. Evid. 201(b)). Wells Fargo requests that the Court take judicial notice of the following five exhibits in support of its MTD:

- **Exhibit A**: Compilation of documents from the Office of Thrift Supervision, Federal Deposit Insurance Corporation and Comptroller of the Currency Administrator of National Banks, which includes the following:

(i) Certificate of Corporate Existence dated April 21, 2006, Office of Thrift Supervision, Department of the Treasury;
(ii) Letter dated November 19, 2007, Office of Thrift Supervision, Department of the Treasury;
(iii) Charter of Wachovia Mortgage, FSB, dated December 31, 2007;
(iv) Official Certification of the Comptroller of the Currency ("OCC") stating that effective November 1, 2009, Wachovia Mortgage, FSB converted to Wells Fargo Bank Southwest, N.A., which then merged with and into Wells Fargo Bank, N.A;
(v) Printout from the website of the Federal Deposit Insurance Corporation dated March 14, 2012, showing the history of Wachovia Mortgage, FSB;

- **Exhibit B**: Adjustable Rate Mortgage Note, Pick-A-Payment Loan, dated November 21, 2006;
- **Exhibit C**: Open End Deed of Trust, dated November 21, 2006, and recorded on November 28, 2006 in the Los Angeles County Recorder's Office as Document No. 06 2623325;
- **Exhibit D**: Deed of Trust in favor of Universal Bank dated April 30, 2008 and recorded on May 15, 2008 in the Los Angeles County Recorder's Office as Document No. 20080865955; and
- **Exhibit E**: Notice of Trustee's Sale recorded on November 3, 2016 in the Los Angeles County Recorder's Office as Document No. 20161365175.

RJN at 2.

In ruling on a Rule 12(b)(6) motion, a court may consider documents on which the plaintiff's complaint "necessarily relies" if: "(1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). In this case, the Gaymans describe the Adjustable Mortgage Rate Note entered into on November 21, 2006 in their Complaint, the existence of this document is central to their claim, and they do not question the authenticity of the copy attached to the Defendants' RJN. Complaint at ¶ 3. The Court will therefore consider Exhibit B in ruling on this MTD.

"[A] court may take judicial notice of 'matters of public record.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (quoting *Mack v. S. Bay Beer Distrib.*, 709 F.2d 1279, 1282 (9th Cir. 1986)). Courts in this circuit have frequently taken judicial notice of mortgage-related documents on record with public offices, including deeds of trust, notices of default, notices of trustee's sale, and assignments of deed of trust. *Grant v. Aurora Loan Servs., Inc.*, 736 F. Supp. 2d 1257, 1264 (C.D. Cal. 2010) (collecting cases). The Court therefore takes

judicial notice of Exhibits C (Open End Deed of Trust), D (Deed of Trust), and E (Notice of Trustee's Sale) because they are public records.

The Court also takes judicial notice of the compilation of documents comprising Exhibit A, in regard to Wachovia's corporate formation and merger with Wells Fargo. These are documents issued by or on file with federal agencies, and are "not subject to reasonable dispute" in that the facts contained therein "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *see also Grant*, 736 F. Supp. 2d at 1265 (taking judicial notice of documents regarding defendant's incorporation and conversion to an LLC and collecting cases in which courts have taken judicial notice of documents related to corporate formation).

In their Opposition to the RJN, the Gaymans argue that Defendants are attempting to introduce Exhibits A through E as evidence against the contested claims. RJN Opposition at 2 [Doc. # 19]. Taking judicial notice of documents does not judicially notice "the truth of the facts recited therein," but only the existence of such documents, whose authenticity are not subject to reasonable dispute. *Lee*, 250 F.3d at 690.

## III.
## FACTUAL BACKGROUND

The Gaymans own and primarily reside at the property located at 732 Ridgeside Dr., Monrovia, CA 91016 (the "Subject Property"). Complaint at ¶¶ 2, 34. Wells Fargo is a servicer of residential mortgages, including the Gaymans' residential mortgage loan (the "Loan"). *Id.* at ¶ 3. NBS was substituted as Trustee for the Subject Property on or about February 24, 2016. *Id.* at ¶ 34.

On November 21, 2006, Plaintiffs entered into a written loan agreement and obtained a $500,000 loan from World Savings Bank, FSB. *Id.* Plaintiffs executed a Deed of Trust, recorded with the Los Angeles County Recorder's Office on November 28, 2006 and secured by the Subject Property, in exchange for the Loan. *Id.*; Exhibit A to Complaint [Doc. # 1-1 at 24–40]. Wells Fargo now services the Loan. Complaint at ¶ 34.

In late 2013, Plaintiffs encountered financial hardship and again faced financial difficulties in 2015 when Mr. Gayman suffered a stroke. *Id.* at ¶ 38. Defendants recorded a Notice of Default against the Subject Property on December 11, 2013. *Id.* at ¶ 39. The Notice of Default contained a false Declaration of Compliance ("Declaration") whereby Wells Fargo attested that it had complied with the contact requirements necessitated by California Civil Code section 2923.55. *Id.* at ¶ 58; Exhibit B to Complaint [Doc. # 1-1 at 45].

At no point at least 30 days prior to recording the Notice of Default did Wells Fargo contact the Gaymans in person or by phone to assess their financial situation and discuss options to avoid foreclosure, and during that meeting advise them of their right to request a subsequent meeting which, if requested, would be scheduled within 14 days. Complaint at ¶ 41. At no point at least 30 days prior to recording the Notice of Default did Wells Fargo provide the Gaymans with the toll-free telephone number made available by the United States Department of Housing and Urban Development ("HUD") to find a HUD-certified housing counseling agency. *Id.* At no point at least 30 days prior to recording the Notice of Default did Wells Fargo call the Gaymans at their primary phone number at least three times at different hours and on different days and by means such that, if they answered, the call was connected to a live representative, nor did Wells Fargo provide the Gaymans a means of contact that offered access to a live representative in a timely manner. *Id.* at ¶ 42.

On October 14, 2014, Defendants recorded a Notice of Trustee's Sale against the Subject Property. *Id.* at ¶ 43. NBS was substituted as Trustee for the Subject Property on or about February 24, 2016. *Id.* at ¶ 34.

The Gaymans submitted a complete application for a loan modification based on a change in financial circumstances on or about November 7, 2016. *Id.* at ¶ 44. The loan modification application has not been denied in writing, nor have the Gaymans been afforded an opportunity to appeal a denial. *Id.* It appears that this is their first loan modification application.

As of the filing of the Complaint, a trustee's sale date of November 28, 2016 was pending for the Subject Property. *Id.* at ¶ 45. Further, the Gaymans "were at all relevant times willing and able to enter a loss mitigation program" to avoid foreclosure and "ready, willing and able to make such payments at the times required of them by law." *Id.* at ¶ 53.

## IV.
## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may seek dismissal of a complaint for failure to state a claim upon which relief can be granted. A court may grant such a dismissal only where the plaintiff fails to present a cognizable legal theory or fails to allege sufficient facts to support a cognizable legal theory. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)).

To survive a Rule 12(b)(6) motion, a complaint must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a pleading need not contain "detailed factual allegations," it must contain

"more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id*. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). In evaluating the sufficiency of a complaint, courts must accept all factual allegations as true. *Iqbal*, 556 U.S. at 678 (internal citation omitted). Legal conclusions, in contrast, are not entitled to the assumption of truth. *Id*.

Should a court dismiss certain claims, it must also decide whether to grant leave to amend. Federal Rule of Civil Procedure 15(a) provides that a party may amend a pleading with the court's leave, and that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2); *see also Moss v. Secret Serv*., 572 F.3d 962, 972 (9th Cir. 2009) (leave to amend should be granted with "extreme liberality"). "Leave to amend should be granted unless the district court 'determines that the pleading could not possibly be cured by the allegation of other facts.'" *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (*en banc*)).

## V.
## DISCUSSION

### A. California Homeowner's Bill of Rights

California Civil Code section 2924.12(a)(1) provides that "[i]f a trustee's deed upon sale has not been recorded, a borrower may bring an action for injunctive relief to enjoin a material violation of sections 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, or 2924.17." Cal. Civ. Code § 2924.12(a)(1). The Gaymans allege various violations of the Homeowner's Bill of Rights ("HBOR"), specifically California Civil Code sections 2923.55, 2923.6, and 2924.17.

Defendants argue that all three HBOR claims should be dismissed for the Gaymans' failure to demonstrate the materiality of the alleged violations. MTD at 11–13. There is no definition of "material violation" provided in the statute. The Court addresses Defendants' materiality argument as to each individual claim.

#### 1. Alleged Violation of Section 2923.55 (False Declaration of Compliance)

The Gaymans allege that Wells Fargo recorded the Notice of Default with a false declaration of compliance attached, in violation of California Civil Code section 2923.55. This section of HBOR governs the timing, recording, and substance of a notice of default.

Before a mortgage servicer records a Notice of Default, it must contact the borrower and discuss steps to avoid foreclosure, or act with "due diligence" in attempting to make contact. Cal. Civ. Code § 2923.55(b)(2). Any notice of default recorded pursuant to Cal. Civ. Code section 2924 must include a declaration stating that these requirements have been fulfilled. *Id.* at § 2923.55(c).

The contact requirements are material to section 2923.55. *See id.* at § 2923.55(a)(2) ("A mortgage servicer . . . may not record a notice of default . . . until . . . [e]ither 30 days after initial contact is made as required by [subsection (b)(2)] or 30 days after satisfying the due diligence requirements as described in sub[section] (f).").

To state a claim under section 2923.55, a plaintiff must allege that the required contact "either did not occur or was deficient." *Pantoja v. Countrywide Home Loans, Inc.*, 640 F. Supp. 2d 1177, 1186 (N.D. Cal. 2009). Not only do the Gaymans' allegations meet the *Pantojo* standard to state a claim under section 2329.55, but they have also sufficiently alleged a claim for relief disputing the validity of the Declaration. *See Barrionuevo v. Chase Bank, N.A.*, 885 F. Supp. 2d 964, 977 (N.D. Cal. 2012) ("When a plaintiff's allegations dispute the validity of defendant's declaration of compliance in a Notice of Default . . . , the plaintiff has 'plead[ed] "enough facts to state a claim to relief that is plausible on its face."'" (quoting *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009))); *see also Intengan v. BAC Home Loans Servicing LP*, 214 Cal. App. 4th 1047, 1057 (2013) (plaintiff stated a cause of action for violation of section 2923.5 when she alleged she was never contacted by defendants and that they never exercised due diligence in attempting to contact her, in contradiction with defendants' declaration of compliance).

Defendants contend that Wells Fargo demonstrated substantial compliance with the contact requirements of section 2923.55 because they engaged in a review of the Gaymans' loan modification application. MTD at 13 (citing *Bell v. Wells Fargo Bank, N.A.*, No. CV 14-4316-JFW (MRWx), 2014 U.S. Dist. LEXIS 153170, at *9 (C.D. Cal. Oct. 28, 2014) ("A loan modification review satisfies the minimal requirements to 'assess the borrower's financial situation and explore options for the borrower to avoid foreclosure' under [section 2923.5(b)(2)]."[1])). Although some courts have permitted loan modification review to satisfy section 2923.55's initial contact requirement, Wells Fargo's review, if any, of the Gaymans' application is immaterial because the Gaymans completed and submitted their modification application *after* Wells Fargo recorded the notice of default.[2] Section 2923.55 directs the loan

[1] Section 2923.5(b)(2) appears to be an older version of section 2923.55(b)(2). Their relevant language is identical, and courts cite them interchangeably.

[2] Defendants suggest that the Gaymans may have submitted an earlier loan modification application, such that Wells Fargo's review of that application might satisfy section 2923.55's initial-contact requirement. MTD at 5

servicer to contact the borrower or conduct due diligence in attempting to contact the borrower *prior* to recording such notice.

In any case, the mere fact that the Gaymans submitted a loan modification application cannot sustain Defendants' theory of substantial compliance. *See Woodring v. Ocwen Loan Servicing, LLC*, No. CV 14-03416 BRO (Ex), 2014 U.S. Dist. LEXIS 100873, at *12–13 (C.D. Cal. July 18, 2014) (plaintiff stated cause of action under section 2923.5 when defendant did not perform the contact measures required by HBOR and did not "respond meaningfully" to plaintiff's loan modification applications); *see also Aguirre v. Wells Fargo Bank*, *N.A*, No. CV 15-1816-GHK (MRWx), 2015 U.S. Dist. LEXIS 86717, at *12 (C.D. Cal. July 2, 2015) ("The *Woodring* court understandably concluded that defendants could not rely on the mere fact that the borrower had submitted applications to claim that they had adequately 'assess[ed] the borrower's financial situation and explore[d] options for the borrower to avoid foreclosure.'").

The Court thus concludes that the Complaint states a claim for violation of section 2923.55.

**2. Section 2924.17**

Section 2924.17 of HBOR provides that a declaration recorded pursuant to section 2923.55 must be "accurate and complete and supported by competent and reliable evidence." Cal. Civ. Code § 2924.17(a). The allegation that Wells Fargo attached a false declaration to the Notice of Default is also the basis of the Gaymans' section 2924.17 claim. As explained above, the Gaymans have alleged a material violation and are seeking the type of remedy provided by the statute. Therefore, the Gaymans successfully state a claim for violation of section 2924.17.

**3. Section 2923.6**

The Gaymans' third and final HBOR claim alleges that Defendants engaged in "dual tracking" in violation of California Civil Code section 2923.6. Section 2923.6 provides that if a borrower submits a complete first loan modification application offered by the borrower's mortgage servicer, then the mortgage servicer is not permitted to record a notice of default or notice of sale, or conduct a trustee's sale while the first loan modification application is pending. Cal. Civ. Code § 2923.6(c). The statute also prohibits a mortgage servicer from recording a notice of default or notice of sale or conducting a trustee's sale until the mortgage servicer either makes a written determination that the borrower is not eligible for a loan modification, the

("Plaintiffs admit they submitted at least one loan modification application and then submitted a subsequent loan modification application based on changed financial circumstances." (citing Complaint at ¶¶ 43, 45)). Although the cited paragraphs track HBOR's statutory language, they do not reference any previous loan modification applications. Indeed, the parties' allegations and arguments support the inference that the application referenced in the Complaint is the first (and only) complete application submitted.

borrower does not accept an offered modification within 14 days, or the borrower does accept the written modification but defaults on or otherwise breaches his obligations. *Id*. The practice of initiating foreclosure proceedings while a borrower's loan modification application is pending is called "dual tracking." *E.g.*, *Alvarez v. BAC Home Loans Servicing, L.P.*, 228 Cal. App. 4th 941, 950 (2014).

The Notice of Default was recorded December 11, 2013. The initial Notice of Trustee's Sale was recorded October 14, 2014, and a subsequent Notice of Trustee's Sale was recorded November 3, 2016. The Gaymans allege that they submitted a complete application for a loan modification on November 7, 2016. The Notice of Default and Notice of Sale were thus recorded prior to the Gaymans' submission of a loan modification application, which does not amount to a violation of HBOR's dual tracking prohibition. Similarly, because no foreclosure has yet occurred, the Complaint alleges only a future violation of section 2923.6.

Arguing that Wells Fargo did not conduct the scheduled November 28, 2016 trustee's sale due to the instant action being filed days earlier, the Gaymans contend that they may still recover fees where a lawsuit results in voluntary corrective action by the defendant . Opposition at 10 (citing *Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553 (2004)). In *Graham*, the Supreme Court of California decided not to abolish the catalyst theory for awarding attorney's fees and concluded that the theory may support the award of attorney's fees to the party that brought suit and catalyzed the defendant's change in behavior. 34 Cal. 4th at 577. *Graham* does not apply here because the catalyst theory is not a basis to sustain a cause of action. *See id.* at 566 (describing catalyst theory); *see also id.* at 576 ("When the suit is mooted early in its prosecution . . . [the catalyst theory] may generally be established during the attorney fee proceeding by declarations, or, at the discretion of the trial court, by an abbreviated evidentiary hearing."). Given that no instance of dual tracking has occurred here, Plaintiffs cannot state a cause of action under section 2923.6 as a matter of law.

**B. Negligence**

The Gaymans next allege that Wells Fargo was negligent in its handling of their loan modification application. Defendants' primary challenge to that claim is that Wells Fargo did not owe a duty of care to Plaintiffs. MTD at 7-10; Reply at 3-7.

"In order to establish liability on a negligence theory, a plaintiff must prove duty, breach, causation, and damages." *Conroy v. Regents of University of Cal.*, 45 Cal. 4th 1244, 1250 (2009) (citing *Ortega v. Kmart Corp.*, 26 Cal. 4th 1200, 1205 (2001)). Generally, "a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Wise*

*v. Wells Fargo Bank, N.A.*, 850 F. Supp. 2d 1047, 1052 (C.D. Cal. 2012) (quoting *Nymark v. Heart Fed. Savings & Loan Ass'n*, 231 Cal. App. 3d 1089 (1991)).

There is a split of authority among the courts in California regarding whether a lender owes a borrower a duty of care when considering a loan modification application. *See Yau v. Deutsche Bank Nat. Trust Co. Americas*, 525 F. App'x 606, 609 (9th Cir. 2013) ("[T]he California courts of appeal appear to be of two minds on the application of that general rule in cases involving offers of loan modifications handled negligently."). The California Courts of Appeal have reached two distinct and divergent conclusions on the issue. *Compare Lueras v. BAC Homes Loans Servicing, LP*, 221 Cal. App. 4th 49 (2013) (finding loan modification applications "fall squarely within the scope" of conventional lender activities, and thus do not create a duty of care), *with Jolley v. Chase Home Finance*, LLC, 213 Cal. App. 4th 872 (2013) (finding a duty of care when lender of a construction loan made "specific representations" to the borrower regarding "the likelihood of loan modification") *and Alvarez v. BAC Home Loans Servicing, LP*, 228 Cal. App. 4th 941 (2014) (finding a duty arises when a lender agrees to consider a borrower's loan modification application). Neither the California Supreme Court nor the Ninth Circuit have spoken on this issue and as such, District Courts have come to different conclusions in light of the split.

This Court concludes that a duty of care arises out of Wells Fargo's review of Plaintiffs' loan modification application. Both the *Jolley* and *Alvarez* courts highlight the importance of the HBOR and the legislative intent behind the enactment of these laws. "[T]he California Legislature has expressed a strong preference for fostering more cooperative relations between lenders and borrowers who are at risk of foreclosure, so that homes will not be lost." *Jolley*, 213 Cal. App. 4th at 903. According to *Jolley*,

> [W]e refer to the existence—and recent strengthening—of these legislative measures because they demonstrate a rising trend to require lenders to deal reasonably with borrowers in default to try to effectuate a workable loan modification. In short, these measures indicate that courts should not rely mechanically on the "general rule" that lenders owe no duty of care to their borrowers.

*Id.*; *see also Alvarez*, 228 Cal. App. 4th at 950-51 (following *Jolley* by taking into consideration the importance of legislative intent behind the HBOR). Like a number of other District Courts, this Court finds *Jolley*'s reasoning persuasive. *See Norris v. Bayview Loan Servicing, LLC*, No. CV 15-06413 MWF (DTBx), 2015 WL 6745048 (C.D. Cal. Oct. 26, 2015); *Salazar v. U.S. Bank Nat. Ass'n*, No. ED CV 14-514 GHK (DTBx), 2015 WL 1542908 (C.D. Cal. Apr. 6, 2015); *Johnson v. PNC Mortg.*, 80 F. Supp. 3d 980, 985 (N.D. Cal. 2015);*Shapiro v. Sage Point Lender Servs.*, EDCV 14-1591 JGB (KKx), 2014 WL 5419721 (C.D. Cal. Oct. 24, 2014).

Having determined that Wells Fargo owed Plaintiffs a duty of care, the Court now turns to the remaining elements of the negligence claim. The Gaymans assert that Wells Fargo was negligent in (1) failing to review their application in a timely manner; (2) misplacing their application documents; (3) mishandling their application by relying on incorrect information; (4) misrepresenting the status of their loan modification application; and (5) continuing foreclosure in violation of public policy and the HBOR's restrictions on dual-track foreclosures. Complaint at ¶ 82. As to the dual tracking allegation, this Court has already concluded that Wells Fargo did not engage in dual tracking because no foreclosure has occurred. The remaining allegations offer threadbare conclusions which are insufficient to plead the element of breach.

Because the Gaymans have not adequately alleged the element of breach, they have failed to state a claim for negligence. The Court will permit the Gaymans to amend their complaint to add factual allegations regarding Wells Fargo's allegedly negligent conduct.

**C. Business & Professions Code Section 17200**

The UCL prohibits "unfair competition," which is defined as "any unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Each of these three prongs constitutes a separate and independent cause of action. *See Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 185-86 (1999). The UCL treats violations of other laws, when committed in the context of business activity, as "unlawful practices independently actionable under section 17200 *et seq*. and subject to the distinct remedies provided thereunder." *Farmers Ins. Exchange v. Superior Court*, 2 Cal. 4th 377, 383 (1992). The Gaymans' cause of action for UCL violations relate to Defendants' alleged (1) HBOR violations, (2) negligence, (3) institution of "improper or premature foreclosure proceedings to generate unwarranted fees," and (4) concealment of the true nature of their assessment of marked-up fees on the Gaymans' account. Complaint at ¶ 89.

**1. Standing Under the UCL**

Defendants contend that the Gaymans lack standing to bring a UCL claim because they did not suffer any economic damages as a result of Wells Fargo's alleged conduct, and that any economic injury suffered would have been caused by their own failure to make the Loan payments as promised. MTD at 11; *see Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322-25 (2011) (standing under the UCL requires not only injury in fact, but also economic injury in the form of lost "money or property" as a result of defendant's alleged wrongdoing). Courts have recognized that the losses associated with the initiation of foreclosure proceedings may constitute the requisite injury in fact for purposes of standing under the UCL even where foreclosure has not yet occurred. *See, e.g.*, *Sullivan v. Wash. Mutual Bank, FA*, No. C-09-2161

EMC, 2009 WL 3458300, at *4–5 (N.D. Cal. Oct. 23, 2009). Thus, the Gaymans have standing to bring suit.

### 2. Acts Underlying the UCL Claim

Because the Gaymans have failed to state a claim for dual tracking or negligence, any UCL claim predicated thereon must also fail. Because the Gaymans have properly pleaded violations of sections 2923.55 and 2924.17 of the HBOR, those acts properly form the basis of the UCL claim.

The Gaymans do not state a claim under the UCL, however, in connection with Wells Fargo's alleged imposition and concealment of improper marked-up fees. Specifically, the Gaymans allege that Wells Fargo illegally overcharged them for default-related services provided by other vendors, and that Wells Fargo concealed these charges by identifying them with titles such as "Miscellaneous Fees" or "Other Charges" on Plaintiffs' account. *Id.* at ¶ 95. The Complaint lacks any facts about why the charges were excessive, when the charges occurred, or which vendors were involved. Thus, these allegations are conclusory and insufficient to state a claim under the UCL. *See Williams v. Wells Fargo Bank, NA*, No. EDCV 13-2075 JVS (DTBx), 2014 WL 1568857, at *9 (C.D. Cal., Jan. 27, 2014) (dismissing UCL claim because the plaintiff did not provide sufficient factual details about the allegedly illegal marked-up fees). The Court will permit the Gaymans to file an amended pleading to attempt to cure this deficiency.

### 3. Relief Sought

Defendants further argue that the Gaymans' UCL claim should fail because no remedies are available to them. Reply at 8. The Gaymans seek relief that includes "full restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits which may have been obtained by Defendants as a result of" the Defendants' unlawful, unfair, or fraudulent business acts or practices, as well as the injunctive relief provided in the UCL. Complaint at ¶ 100. As discussed above, the Gaymans fail to assert adequate facts regarding Wells Fargo's alleged practice of charging and concealing improper marked-up fees for default-related services, precluding a restitution award on such fees. Further, restitutionary disgorgement is not an available remedy in an individual action under the UCL. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1152 (2003).

The Gaymans have alleged, however, that Wells Fargo improperly initiated foreclosure proceedings, and they seek injunctive relief in connection with their valid HBOR claims. There are sufficient facts alleged here to give rise to a threat of future misconduct, such that injunctive

relief is available. *See Madrid v. Perot Sys. Corp.*, 130 Cal. App. 4th 440, 463–65 (2005). As such, the Gaymans' cause of action under the UCL survives.

### D. Demand for Accounting

In California, an accounting is a remedy providing a means of discovery, not an independent cause of action. *See Teselle v. McLoughlin*, 173 Cal. App. 4th 156, 180 (2009). Nonetheless, a "cause of action" seeking an accounting may be maintained when (1) a relationship exists between the plaintiff and defendant that requires an accounting; and (2) some balance is due to the plaintiff that can only be ascertained by an accounting. *Id.* at 179 (citing *Brea v. McGlashan*, 3 Cal. App. 2d 454, 460 (1934); 5 Witkin, *California Procedure* § 819 (5th ed. 2008)).

The Gaymans seek an accounting in connection with alleged "improperly marked-up" and unnecessary fees charged by Wells Fargo to their account. Complaint at ¶¶ 105–06. The Gaymans fail to state a claim on this cause of action, and it does not appear that they satisfy the standard for pursuing a cause of action for accounting because there are no allegations to plausibly suggest Defendants owe them money. *Id.* at 179–80 ("The right to an accounting can arise from the possession by the defendant of money or property which, because of the defendant's relationship with the plaintiff, the defendant is obliged to surrender."); *see also Pazargad v. Wells Fargo Bank, N.A.*, 2011 WL 3737234, at *5 (C.D. Cal. Aug. 23, 2011) ("[B]ecause it is Plaintiffs who still owe money to Defendant, and not the other way around, Plaintiffs cannot properly bring a claim for an accounting.").

The Gaymans' request for accounting thus fails, but the Court will permit them to file an amended pleading to cure this deficiency, if possible.

## VI.
## CONCLUSION

In light of the foregoing, Defendants' motion to dismiss is **GRANTED** in part and **DENIED** in part as follows:

1. Defendants' motion to dismiss the Gaymans' causes of action under HBOR for violations of sections 2923.55 and 2924.17 is **DENIED**;

2. Defendants' motion to dismiss the HBOR cause of action under section 2923.6 claim is **GRANTED without leave to amend**;

3. Defendants' motion to dismiss the cause of action for negligence is **GRANTED with leave to amend**;

4. Defendants' motion to dismiss the cause of action brought under the UCL is **DENIED** insofar as the claim relates to violations of HBOR's sections 2923.55 and 2924.17, **GRANTED without leave to amend** insofar as the claim relates to violations of HBOR's section 2923.6, and **GRANTED with leave to amend as to** Defendants' alleged imposition and concealment of improper marked-up fees;

5. Defendant's motion to dismiss the demand for accounting is **GRANTED with leave to amend**.

The Gaymans shall file an amended complaint within 21 days of the date of this Order. Defendants' response to the amended complaint shall be filed pursuant to a time frame approved by the Court after the parties have completed their participation in the Loan Modification Mediation Program.

**IT IS SO ORDERED.**